We will get started with our first case of the day. That is United States of America v. Alhindi. And we'll hear first from Mr. Lopez. Good morning. Mr. Rosenbaum, may it please the court. Mr. Haitham Alhindi suffers from a delusional disorder that has rendered him incompetent to stand trial. I'm so sorry to interrupt you and Stephanie, could you just stop Mr. Lopez's time for a moment. I just want to remind the parties that we have entered an order to seal his specific nature of Mr. Alhindi's health impairment. And so we will not be mentioning that during the course of the argument. And with that, we're going to start your time over again, Mr. Lopez. I apologize for the interruption. I'm sorry, Your Honor. So again, good morning. Mr. Alhindi suffers from a disorder that renders him incompetent to stand trial. He's been detained at the medical facility in Budner, North Carolina, for seven months and counting. He has been in the custody of the Attorney General for purposes of hospitalization and treatment for 14 months and counting. Just a quick question. Yes, sir. You said and counting. Where is he now? Sort of what's the status now? Is he being, is he in restorative, is he in a restorative program? There was something about him refusing to take meds. Maybe he's being force-fed meds. Like just how does, where do things stand now? That's a, yes, an important question, Your Honor. He's currently still at Budner Medical Facility. The facility has requested that the district court make a finding as to whether he should be forcibly medicated. And that's where it stands in the district court. District court had a hearing on that, but it hasn't resolved it in any one way or the other. Importantly, Your Honor, the district court has also failed to make a finding that's required under 4241 D2A. That provision authorizes the district court to extend the time from four months to a reasonable period. To date, the district court has not made that finding. And also importantly, I don't think the district court could make that finding. We put the Bureau of Prisons report as supplemental authority, and if you take a look at that report, first of all, there's conflicting testimony or evidence in that report. But the staff psychiatrist, the opinion of the staff psychiatrist, which is quoted in that report, is that Mr. El-Hindi will not substantially likely be rendered competent on medication. Despite that, the psychologist concludes that there's likely a substantial probability that Mr. El-Hindi's competence to stand trial can be restored with the appropriate treatment with antipsychotic medication. But again, more importantly, the district court has not made a finding which is required under 4241 D2A. And that finding that needs to be made is that there's a substantial probability that Mr. El-Hindi would be made competent within a reasonable amount of time. The district court simply has not made that determination. So even . . . If that hasn't made that determination or hasn't yet made that determination. Hasn't yet made that determination. Although I think the plain language of the statute in this court's decision in Donofrio would require that finding pretty much as soon as the four-month period is over. So I think if the district court was going to make that finding, the authorization to then extend the four-month period requires that finding before it can go forward. Other courts have similarly held. But I think the Donofrio decision from our court, from the 11th Circuit, makes that clear. The language of the statute makes that clear. That's not why we're here though, right? We're really here for the second hospitalization order and the second competency evaluation. That's really why we're here in appeal from the . . . I think it's the April order that you took the appeal from. Not from what hasn't quite happened yet, right? Well, I would slightly disagree with that. We are here because of the April order. But that order put him into the custody of the Attorney General. That's how he got to Butner. And now the statutory time has passed. And he is no longer properly being detained, even under the government's reading that we would question that. We would say that the four months started when he was rendered to the custody of the Attorney General. But certainly, even under the government's reading of the statute, even if you're saying, well, the four months doesn't start until hospitalization, which has been the government's position all along, we're now into seven months, hospitalization under 4D1. And the district court has not extended that, has not made the proper finding that would give it authorization to extend it. So we are, in fact, on that point as well as just challenging to the order remanded him back in April. The only error that has been alleged, as I understand it, and please show me in your wrong under both the statute and as a matter of due process to order a second competency evaluation and to then order that he be hospitalized again a second time based on the statute and the Constitution. Right? That's why we're here. Yes, sir. And if you look at page 26 of our brief, I think it's ECF page 37 of our brief, but our written brief, we make the argument that I'm making right now, that the district court has no authority. As part of that argument, we made the express argument that the district court, the only statutory authority that the district court would have to exceed the four-month period, because we argued it had already been exceeded, would be to make that finding and that only making that finding gives the district court the authority to extend that period. Right. But again, we review orders. We don't review things that haven't happened yet. The only order that's before us, as I understand it in this interlocutory appeal, is the April order. And we're now about six minutes into your argument, and I haven't heard a single argument yet about why what the district court did was error. So please tell me why it was error. Yes, sir. And if I could just briefly, it's not just that this court reviews the order, but has to review the effect of the order. The effect of that order is to now violate Mr. Ahindy's due process argument. But I'll go straight to the question asked by the court. And that is that the district court did not have the authority to enter that April order that comes straight from the structure and language of the statute itself. Nothing in D-1 gives the district court the authority to do anything. After the district court has made that determination, which it did in November of 2022, that Mr. Ahindy's incompetent, I am now remanding you to the custody of the attorney general. The district court, under the statutory scheme, has no further authority. The district court do exactly what the statute authorized it and required it to do, which was to remand him to the custody of the attorney general. Done. That's the first shall clause. That's the only thing that the statute says the district court shall do. Shall remand to the custody AG. Done. Right. And that was done in November of 2022. After that, under the statutory framework of D-1, what happens then is he goes out, and he's now competent. He will never become competent. He's not competent, but he may become competent within a reasonable amount of time. Then the district court has then authority to act. That didn't happen. Can I ask you a hypothetical? Certainly. So imagine for a moment that a district court gets a report from counsel that a client is not competent. He orders a competency evaluation. It comes back as incompetent. There's a hearing held. It's stipulated that the doctor is going to testify consistently with that. That's the only evidence, and there's a finding of incompetency, and he's waiting for three or four months. The district court calls a status conference two months before the four-month period is up to send to Butner, or to the reasonable time to send to Butner. And the defendant comes in, and the district court is observing him, and he appears to be consulting with counsel. He's no longer doing the things that he was doing before, maybe because he's now medicated, and he looks to be completely competent. Is the district court prohibited at that point from saying, I'd like an updated evaluation to make sure that we're not sending someone, both wasting resources and hurting the defendant, by sending them to a facility in North Carolina so that we get a second evaluation? Is that wrong, to do that extra step or extra level, just to check to make sure? I would say that it is not authorized, and the D'Onofrio decision from this court says that the district court just does not have the authority to circumvent the exact and specific procedure that's outlined by 4241. But if counsel, so additionally my hypothetical, counsel comes back and says, Judge, listen, in the last two months, my client's now medicated, he's completely competent, I don't want him going through this process, please do not send him to Butner, just have another evaluation, he's gonna come back competent, I'm confident of that. You're telling me that hands are tied, we must go with whatever the bureaucracy tells us to do? That is correct, Your Honor, and I think that's just a plain language of the statute. But in your hypothetical, Your Honor, I have to tell you, counsel, that seems, that seems not to make a lot of sense that the district court, in other words, the statute seems like a floor of due process protection. But it seems that if a court wants to do more than that to protect the rights of the defendant, that it should be allowed to do that, right? In your hypothetical, Your Honor, the one thing I would take challenge with is that But I'm not challenging anything, just tell me why it's, what your position is based on the hypothetical. That the procedure that's outlined in D1 really looks towards an almost immediate. So I'm remanding you to the custody of the Attorney General, almost immediately, he should be sent to the hospital, so there is no opportunity under the statute, under the framework of the statute. But we, we live in the real world and we know that's not how it works. Just the transporting someone from Miami, a prisoner from Miami to North Carolina is, takes some time. So whatever that time gap is, if something changes, why can't the court do something about that? Because the structure of D1, Congress, when they set up that structure, now I'm almost running out of time, but when they set up that structure pursuant to Jackson, they were trying to perfectly balance two different things. So the government's right to try and convict somebody who's violated their laws, but also the due process rights of the accused. And in balancing those two things out, they came out with this very specific, very detailed procedure. Courts, you have to have a hearing, evidence, and then you make a determination. Somebody's incompetent. You send that person off to the custody of the Attorney General. They have, in our view, four months now to come back with a finding, one way or the other. Real medical experts. Not an attorney who, especially in somebody like Mr. Alhindi's case, I've talked to him. He seems pretty normal, but he isn't. And that's just the subject of, you know, the illusion, I mean, the, his, his condition. It just makes him seem that way, but he's not. And so we cannot have attorneys. We cannot have even judges. We cannot have even the initial people at FTC that make a determination. We need, Congress has said, we need a medical facility to make that determination because the stakes are so high for both, for both parties, for the government and for the defendant. And we have to follow this procedure. That procedure has to be followed. That procedure has to be done, we argue, within four months. And I see I'm way past my time, so I appreciate it if you'll pass on. All right. Thank you, Mr. Lopez. You've reserved five minutes. Thank you. Ms. Mariani. Good morning, your honors, and may it please the court. I'm Assistant United States Attorney, Nicole Mariani, appearing on behalf of the government. Joining me at council table is Evelyn Blanco-Halloran, an attorney with the Federal Bureau of Prisons. This is a narrow interlocutory appeal by an undisputedly incompetent defendant charged with five violent crimes. As Judge Luck pointed out, the only issue before this court now is whether the district court erred when it renewed its order hospitalizing Mr. El-Hindi for a statutorily required competency restoration evaluation. The district court did not err. As a threshold matter, this appeal is moot. Because Mr. El-Hindi underwent his restoration evaluation between June and October 2023, this court cannot, at this procedural moment, provide him with any non-advisory relief on I mean, the entire reason that he's now hospitalized is because of that evaluation, right? So it's, how can it be, well, let me put it to you this way. If we were to invalidate that order, wouldn't he then have to be released from hospitalization? I do not believe so, your honor, and here's why. There's two pieces of it. Really what it relates back to, and what Mr. El-Hindi has never challenged, is the November 2022 order that he undergo a section D1 evaluative hospitalization. Under that order, which sort of started this whole thing, the April 2023 order, the district court was merely renewing it and reconfirming after getting that information back. I mean, it sounds like you're trying to have your cake and eat it too. You are arguing that you can, that the court can go ahead and enter a second order, which is still in place, and that can't possibly be. I mean, it seems to me that if the second order is going to be able to be entered, it must be entered to supersede the first order. So how can you rely on the first order in order to explain his continued hospitalization if the second order is vacated? I see your point, your honor, and there's sort of a two-part answer to it. The first is, in writing the April 2023 order, the district court specifically references back to the November 2022 order. Judge Cannon never vacated it, and she simply said she was renewing it. But I think at a certain point, I'm not sure that's of much moment, because where, as Judge Newsom pointed out, I think where we are now in this statutorily mandated restoration process is now Mr. El-Hindi has moved to section D2. Under section 4241D, it's a two-step mandatory process. True, but he couldn't get to section D2 if he didn't first have the order that got him to section D1. And so if we vacate that order, what is the basis for his continuing to be hospitalized? I see your point, Judge Newsom, and this is sort of where we get into it is a little bit tricky, is that Congress has mandated, and then not only in section 4241D, but it also comes from the Supreme Court's precedent in Drope v. Missouri and Jackson, that defendants must go through this competency restoration process. And so we're stepping the defendant through this process. Right, but the reason they must go through the competency restoration process is because they have been found to be incompetent pursuant to a commitment order that was valid. Correct. So if the commitment order is no longer valid, and that's what triggers everything that comes after it, how can we have a D2 order in a vacuum that nothing authorized? I think that means we need to sort of parse apart then sort of where we are in the procedural process, which is we have section 4241A, which requires this incompetency finding. At no point has Mr. Elhandy challenged the fact that he is incompetent. He has never argued that the district court erred by finding at any moment that by a preponderance of the evidence he is presently incompetent. So we have that piece. But we still have to have, I mean, don't we have to have an order that authorizes him to be hospitalized before he can remain in hospitalization? I mean, it seems to me like you have to have some kind of an order that authorizes that under 4241D, and you can't have the order that authorizes it without first having the order that authorizes the commitment for the evaluative purposes and for the purposes of trying to restore his mental health. I see that point. One thing I would direct the court to, and I think we can, if the court would prefer, I can move on to also explaining why this April 2023 order was not an error, which is for you to look- It's your time, so you should spend it however you'd like. All right. One point on that is just to look to this court's precedent in Solomon and Al-Najjar. Both of those were immigration context cases, and what they both held is that when there was a subsequent statutory order supporting the defendant's continued detention or detention under a different grounds, then a challenge to that first order became moot. Let me ask it to you in a different way. What if, it seems to me that since we're talking about a four-month period, and it's pretty much nearly impossible for an order like this to be appealed interlocutorily and resolved on appeal within four months, and Mr. El-Hindi has already been committed twice by two different orders, and it seems as though there's a very strong likelihood that if he ever were to be found competent again, that he could lapse back into this issue. Why wouldn't ... I mean, because what we're discussing now is the mootness question. Why wouldn't this be capable of repetition yet evading review? Yes, Your Honor. This is a little bit tricky. One thing, El-Hindi had moved to stay this appeal before this court, and this court denied that motion to stay. But also, if we find that this court finds that this appeal is moot, there are still avenues of relief open to Mr. El-Hindi before the district court. If he believes that his current hospitalization is improper, as this court instructed in McNeil, which the government cited in its response to the jurisdictional question, he can file a motion under 4247H, asking the district court to release him from custody. He can also file a writ for a petition of habeas corpus, asking to be removed from Federal Medical Center, Butner, and returned to FDC Miami, where he is separately being detained under the Bail Reform Act. If he believes the district court is not moving quickly enough to resolve the pending Section D2 on involuntary medication orders ... I'm sorry, motions, he can move this court for a petition for writ of mandamus to encourage the district court to decide those motions more quickly. I mean, at any point under the collateral order doctrine, if the district court then on those motions, he can then bring the appeal at that point. Can I ask you a question about the merits? Yes, Judge Newsom. So, I'll confess. I'll put my cards on the table. I don't think that the statutory arguments, in my mind, are very strong, either that there is sort of an implicit prohibition on a second competency evaluation, or that the four months runs from the remand order instead of the date of hospitalization. I just can't quite make the statute do those things, but this guy has been in custody for a long time, and it does seem like some sort of administrative bungling is responsible for some of that time. I recognize that under the due process case law, we give a lot of deference to the medical by a percentage or in absolute terms is chalk up-able to real mental health stuff, and how much of it is just him kind of languishing in prison, waiting on people to get their acts together, and how does that affect the due process analysis? Absolutely, Your Honor, and with all honesty, this has been a far from ideal process, what's been going on post-pandemic. With this competency restoration process, it's something that BOP takes very seriously and has been working to remedy. Just as sort of a matter of background, before the pandemic, the average wait time was one to two months. After the pandemic, it sort of spiked to eight to nine months. BOP has been working to remedy this backlog by opening new facilities. They now have it down to about five to six months, but it is something everyone's taking very seriously and sort of figuring out what to do within the wake of this pandemic. I'm going to sort of walk you through where Mr. Alhindi has been. I believe he ... The competency process started on July 15th. He'd been detained before that, but under the Bail Reform Act due to its dangerousness. Wasn't he detained for seven months after there was a sort of finding that he needed to be ... Absolutely, Your Honor, you're correct. Seven months elapsed between when the district court first found him incompetent in November 28th, 2022, and when he was admitted for his evaluative hospitalization in June 2023. That's absolutely correct. To go to your point about the due process argument, there's sort of two, I think, flaws in the due process argument at this moment for Mr. Alhindi. The first is the court you've already held, you don't have jurisdiction to consider the motion to dismiss the charges, so really all we can look at is what injunctive relief could be available to Mr. Alhindi at this point. Every court to find a delay in Section D1 hospitalization violated due process, except for one district court facing an extreme circumstance with an elderly defendant on his deathbed, has found that the appropriate remedy, and sort of the only remedy, was to order the defendant to begin that evaluative hospitalization. Here, Mr. Alhindi has not only begun that evaluative hospitalization, but completed it. It's unclear what remedy would be available were the court to find a due process violation. Well, it seems to be even a little different than that, because the order under review is, as I understand what the district court did was, hey, BOP, you're taking a really long time. I am telling you right now to start this process within one week. In other words, it seems to me that this was a pro-due process order, not an anti-due process order, at least what the district court did, or the order which is actually on appeal to us. Now, whether he's been held too long and whether this thing should be dismissed doesn't seem to be before us. Do I have that right? You are absolutely correct, Judge Locke. At any moment, there is this delay occurring. At every moment, at every turn, you have a district court that's looking out for the defendant's liberty interest in not being hospitalized unless they are presently incompetent. This goes back to the first clause of section 4241D, which says, if the defendant is presently suffering from a mental disease. It says, if and presently suffering. We always kind of want to go back and look, that is this threshold checkpoint determination. And then back to Judge Newsom's point about due process, that yes, this has been far from ideal what's happened in this case, but I do not think it goes as far as to violate due process, and here's why. Well, let me ask you this before you start into the timeline. Judge Locke's question is the only question before us whether the April order violates due process, not whether this whole sort of fiasco violates due process. I believe you are correct, Judge Newsom. You know, when we look at, when we really break down this case, it's a very narrow interlocutory appeal that Mr. El-Hindi just took of this one renewal order. This is the only thing he's taken issue with. And so at that point, do we want to look at what the district court has done, and is that violating due process? And what Jackson tells us is this due process analysis is done by looking at, was sort of the time that he's been commitment reasonably related to the purpose of the relief. I mean, the purpose of committing El-Hindi under this section D1 was to hospitalize him for treatment in a suitable facility to evaluate his potential competency. Section D1 directs that BOP to find a suitable facility in which to hospitalize the defendant based on his particular evaluative and rehabilitative needs. Section 4247A2 further defines suitable facility as a facility that is suitable to provide care or treatment given the nature of the offense and the characteristics of the defendant. You know, sort of while we look at either between April and June 2023, or if you want to expand it out, which I think we don't need to in this case given its procedural posture, November to June 2023, BOP was finding a suitable facility in which to hospitalize El-Hindi. First, to be suitable, the facility has to be able to provide competency restoration evaluation to a male defendant, which requires both particular medical professionals and also the availability of certain group courses on court proceedings. At the time of the hospitalization order in November 2022, there were three facilities in the country that could provide that kind of treatment. They were facing a backlog of COVID-19 patients in the wake of a global pandemic. Then that pandemic backlog sort of impacts the second part of finding a suitable facility. When we look at section 4247A2, Congress further directed BOP that it had to place the defendant in a facility that is suitable to provide care or treatment of that individual defendant. To be able to provide care or treatment, the facility has to have space to accommodate the defendant upon arrival. Thus, at the time of El-Hindi's hospitalization order, there was no suitable facility in which he could receive that immediate treatment. At all times, BOP was working to place him in that suitable facility. He was on a wait list. They were opening new facilities. They were moving defendants through this process as best they could. According to the delay in El-Hindi's evaluative hospitalization, while far from ideal, did not violate due process because it was reasonably related to BOP's placement of him in a suitable facility in the wake of a global pandemic. As the district court noted in that April 2023 order, El-Hindi had been waiting in line for his place at Butner continuously throughout the process. The district court doing the updated competency… It was reasonably related to his receiving an evaluation and mental health care treatment, right? I mean, that's really the reason that we had the order, and it wasn't reasonably related to that. Was it? I'm not sure I followed your question. I missed the beginning of your question. It's okay. So, in order for it not to violate due process, it has to be reasonably related to the reason for the order, right? Yes. Okay. So, the reason for the order was to evaluate his mental competency, and then, if required, to provide him with mental health care treatment. And it seems to me that the delay was not reasonably related to evaluating him to his mental health evaluation or to his mental health care treatment. Was it? I believe it was. And maybe I'm a little… Correct me if I'm wrong. I'm a little confused about your question. But let me break it out. So, what happened under 4241A is the district court made the legal finding by a preponderance of the evidence that he was mentally incompetent. The next step is he needs to go spend four months in a more comprehensive psychiatric evaluation to determine whether his future competency can be restored with treatment. That's what he was waiting to be placed in that evaluative hospitalization, the second piece, to be in a setting which needed particular medical professionals and particular group therapies over four months to determine, is this someone whose competency can be restored in the future? Will treatment work with him, work for him, or is this a time when we need to move to the civil commitment stage of the proceedings? I see my time is up. If the court has no further questions, the government will rest on its brief and motion to dismiss and ask that this court either dismiss this appeal or affirm the district court's April 2023 order renewing Mr. Elhindy's hospitalization order. Thank you, counsel. Thank you, your honors. We'll hear again from Mr. Lopez. Thank you. I'd like to start out by pushing back a little bit on the authority. So yes, we're hearing an interlocutory appeal on the April order. But as the supplemental authority that I filed with the court makes clear, this court can take pendant jurisdiction for issues, even an interlocutory appeal, for issues that are inextricably intertwined with that appeal. It's hard to say that Mr. Elhindy's current detention at Butner, which violates the statute, which violates due process, is not inextricably intertwined with the order that we are challenging on appeal. And I do believe that although we, that this court said we couldn't appeal or deal with the motion to dismiss, the denial of motion to dismiss the indictment, that doesn't mean that this court cannot look at this case and say, yes, if we find that Mr. Elhindy's due process are being violated, that the statute is being violated, this court has the authority to order, and this is what we're asking, his immediate return to the Southern District to be freed from Butner. It seems like the due process question is different. And as I understood your brief, and as I understand the argument, there's a question of whether as a matter of constitutional due process, a court is allowed to order a second hospitalization after having given a first hospitalization. That's the argument you make in brief. That goes to the April order. There's a second due process issue that went to the denial of your motion to dismiss below. That is, this whole thing has taken too long, and as a matter of due process, at some point, we don't know when that point is, but at some point, this becomes just too long of an ordeal, and he has to be released. Those are separate arguments, am I right? They are separate arguments, your honor. And how are they inextricably intertwined? I guess that would be my question. Those two are not inextricably intertwined. I agree with you. That's correct. The April order, which we are challenging, is inextricably intertwined with the due process violation that is ongoing right now. That is, his detention at Butner for seven plus months without the authority that is required under D-2A. That's a due process violation. That's a statutory violation. That is inextricably intertwined with that April order, and this court has the authority to take a look at that, and as part of the remedy, could, as we're asking, immediately order his release from Butner, return to the district court, dismissal of the indictment, release pursuant to the Bail Reform Act. All of that, this court has the authority, if it finds, which I think is very clear, that his due process rights are currently being violated as part of that April order. The second point I would want to make, Your Honors, is that to address Judge Newsom and Judge Rosenbaum's concern, yes, Jackson says a person can be detained, and if I could just read from there, at least the due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is being committed. What happened in this case is that BOP just dragged its feet and did things that were just inexplicable from the very beginning. Do you think, is it a fair consideration for due process purposes, the pandemic-related backlog? I mean, is it fair? Like, what if the detention was going on for what we would all consider to be too long, but BOP, you may not agree with this, you may not believe it, but BOP could convince us that they were doing their level best. Is that relevant? One, I would not be convinced of that, but I don't think there's anything in the record where BOP says this is because of the pandemic or the ongoing pandemic, none of that, and this is way past the pandemic stage. Just to give you an example, if I could, Your Honor, from the very beginning. So Mr. Ahindi's arrested in May, detained in May, in July, and Mr. Berry, who's here, realizes there's something wrong with Mr. Ahindi, he cannot assist me, makes a motion to the court. The court, the very next day, issues an order saying, I want a competency evaluation, you must, I think this was on July 15th, you must complete that competency evaluation by August 28th. What does BOP do? They send him to Los Angeles. Why? I don't know. They haven't explained it. There's nothing in the record in which BOP explains why they had to send him into Los Angeles. Now, when it happens later on in March, and there's a second competency evaluation, he's sent to FTC. The competency evaluation is done within 30 days. Why couldn't that be done the first time? I don't know. BOP hasn't explained. So they send him to Los Angeles. He doesn't even get to Los Angeles until August 15th. It takes a month. It takes another month before BOP realizes, we're not even going to get him to do the evaluation, and they tell the court. The court, and I commend the court for this, is really upset with BOP. It's really frustrating. I'm seeing my time's up, but I just want to continue briefly. This is just throughout. If you look at the timeline of what BOP does, that letter that they send in March, because the court has said, no, I'm not going to give you more time. I told you February 28th, and here you are on the eve telling me you're not going to do it. And then they come up with this lame letter of March 1st. Everything that BOP has done up to this point is just unacceptable. It's unacceptable under the statute. It's unacceptable under due process. And Mr. El-Hindi has suffered, been in detention for 22 months, been in the custody of the attorney general for over 14 months. That's unacceptable. And we would ask the court for the relief I just asked, that he be immediately released from Butner, that he be returned to the Southern District of Florida, that this court remanded to the district court with instructions to dismiss the indictment and to release him under the bail reform act. And I thank the court for the time and the additional time. Thank you. Thank you, Mr. Lopez. All right.